**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**FRANZ,**

**Plaintiff,**

**-against-**

**NATIONAL FOOTBALL LEAGUE, et al.,**

**Defendants.**

---

**1:23-cv-11288 (ALC) (JLC)**

**OPINION AND ORDER**

**ANDREW L. CARTER JR., United States District Judge:**

Plaintiff Charles Franz, brings this action against Defendants National Football League, NFL Properties LLC, NFL Enterprises, LLC, each of the NFL member football teams ("NFL Teams"), and Fanatics, LLC (collectively "Defendants"), alleging that the NFL Defendants and Fanatics have unlawfully conspired to grant Fanatics a privileged position in the market while driving out competition from retailers who sell NFL Licensed Products on Third-Party Online Marketplaces ("TPOMs"). In the instant motion, Defendants NFLP and affiliated entities and Fanatics move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable antitrust claim.

As the Court has already laid out in *Casey's Distributing, Inc. v. NFL*, 2025 WL 1928544 (S.D.N.Y. 2025) as well as its decision dismissing the Second Amended Complaint in *Casey's*, Plaintiffs in Casey's failed to adequately allege that NFL's policies and choices regarding the authorization of specific seller of its products are unlawful. The Court gave Plaintiff here an opportunity to amend its Complaint in light of the Court's ruling in *Casey's*. Plaintiff Franz chose not to amend. Because Plaintiff has not adequately alleged violations of

antitrust law, the Court GRANTS Defendants' motions to dismiss.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts, which are set forth more fully in the Complaint. ECF No 1. Plaintiff brings this action under Sections 1, 2 and 3 of the Sherman Act, 15 U.S.C. §§ 1-3, and Section 16 of the Clayton Act, 15 U.S.C. § 14 on behalf a similarly situated class. *Id*.

### I. Licensed Sports Products Industry

As part of the NFL Licensed Sports Products industry, trademark owners (e.g., individual sports teams) license their marks to licensees who make products that are sold to distributors. Distributors may retail the products directly to consumers or sell the products to other retailers, who then re-sell them directly to consumers. Complaint ¶¶ 86- 88. Rather than competing independently, the NFL Teams have formed a "cartel" to jointly organize the licensing of their marks (as a single group) through Defendant NFLP. *Id*. Firms occupying upstream positions in the supply chain as manufacturers or trademark owners also act as retailers selling directly to consumers. *Id*. ¶ 89. NFLP serves as the representative of the NFL and its 32 constituent member teams for the licensing of their logos, trademarks, emblems, or other indicia ("Intellectual Property"). *Id*. ¶ 84. In this role, the NFLP controls the Intellectual Property of the NFL and its constituent NFL Teams, including merchandising and licensing of NFL products that bear NFL Intellectual Property. *Id*. For that reason, the NFLP maintains all or substantially all control over how NFL Licensed Products reach consumers, and it does so for the NFL itself and for each of the NFL's constituent member teams. *Id*.

### II. Alleged Conduct

Plaintiff Charles Franz purchased NFL Licensed Products directly from Defendants during the Relevant Time Period. In 2015, the NFLP announced it was implementing an Online Distribution Policy ("ODP") restricting NFL Licensed Product sales on TPOMs by purportedly licensees to arrange that any retailer selling on a TPOM first be approved by NFLP. *Id*. ¶¶ 117-121. The proffered reason was "to ensure that such retailers maintain control over, and responsibility for, their e-commerce transactional environment." *Id* ¶ 121. Plaintiff alleges that Defendants conspired to allocate the market for NFL Licensed Products on Amazon and other TPOMs and unlawfully leveraged their market power over licensees to force those licensees to boycott smaller retailers who sold NFL Licensed Products on or through TPOMs. *Id*. ¶ 115.

## III. Alleged Relevant Market

Plaintiff alleges that the "relevant product market is the TPOM retail market (including, without limitation, direct sales to Amazon for resale) for Products bearing the Intellectual Property of the NFL or any NFL Team" ("NFL Licensed Products"). *Id*. ¶ 143. Plaintiff argues that consumers of NFL Licensed Products who would be purchasers from Plaintiff Casey's and the Class members have "fan loyalty and do not deem licensed products from other athletic leagues or other types of licensed products to be reasonable substitutes." *Id*. ¶ 145. Plaintiff further alleges that "[t]here is neither reasonable interchangeability nor cross-elasticity of demand for non-NFL Licensed Products or other types of licensed products," and that brick-and mortar sales as well as other online sales do not compete with nor are adequate substitutes for TPOM retail sales. *Id*. ¶¶ 73-87, 145.

## IV. Alleged Injury

Plaintiff alleges continuing collusion between horizontally competing retailers—the NFL Defendants, Fanatics, and other retailers identified throughout the Complaint (for example,

FOCO and Boelter Brands, the latter being owned by Logo Brands)—of group boycotting Casey's and the Class (also Defendants' horizontally competing retailers) from retailing NFL Licensed Products on TPOMs. *Id.* ¶ 204. Plaintiff also alleges continuing collusion between horizontally competing retailers—the NFL Defendants and Fanatics—of group boycotting Casey's Distributing (a former distributor) and the Class (also Defendants' horizontally competing retailers) from selling NFL Licensed Products directly to Amazon (not on Amazon). *Id*. ¶ 136. Finally, Plaintiff alleges continuing collusion between horizontally competing licensees—Fanatics and other licensees identified throughout the Complaint (for example, Logo Brands)—of refusing to sell NFL Licensed Products to Casey's and the Class. *Id.* ¶ 143.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 29, 2023. ECF No. 1. On March 4, 2024, the Court issued a stay while the motions to dismiss in *Casey's* were pending. ECF No. 25. On September 3, 2025, the Court lifted the stay and set a briefing schedule for Defendants' motions to dismiss. ECF No. 43.

On November 10, 2025, Defendants filed their motions to dismiss the Complaint. ECF Nos. 49, 51. On January 6, 2026, Plaintiff filed his Opposition. ECF No. 56. On January 30, 2026, Defendants filed their Replies. ECF Nos. 57, 58.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663. Indeed, deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

Antitrust claims in particular must be reviewed carefully at the pleading stage because false condemnation of competitive conduct threatens to "chill the very conduct the antitrust laws are designed to protect." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004) (internal quotation marks omitted). However, "[t]here are no heightened pleading requirements for antitrust cases," *Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, No. 00CIV5008(CM)(LMS), 2002 WL 1205740, at *2 (S.D.N.Y. Mar. 15, 2002) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001)), and "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly," *Todd*, 275 F.3d at 198 (quoting *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

**DISCUSSION**

Just like in *Casey's*, this Court finds that the Plaintiff has failed to allege facts sufficient

to plausibly plead an antitrust injury. On a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the Plaintiffs' favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 61 (2d Cir. 2010) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Indeed, "[t]hreadbare recitals of the elements of a cause of action" and conclusory allegations are not presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Disregarding legal conclusions couched as fact, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Dane v. UnitedHealthcare Ins. Co*., 974 F.3d 183, 188 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). A claim for relief is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Antitrust Standing**

Standing is "a threshold, pleading-stage inquiry," and a complaint that fails to allege standing must be dismissed. *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C*., 711 F.3d 68, 75–76 (2d Cir. 2013) (quoting *NicSand, Inc. v. 3M Co*., 507 F.3d 442, 450 (6th Cir. 2007) (en banc)). An antitrust plaintiff must establish constitutional standing under Article III as well as antitrust standing. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (hereinafter, "AGC"); *In re DDAVP Direct Purchaser Antitrust Litig*., 585 F.3d 677, 688 (2d Cir. 2009). To plead antitrust standing, a plaintiff must allege more than just an injury causally linked to unlawful conduct. *Gatt*, 711 F.3d at 76. The Supreme Court has identified several factors that courts should consider in determining whether a plaintiff has antitrust standing: (1) the causal connection between the violation and the harm; (2) the presence of an improper motive; (3) the type of injury and whether it was one Congress sought to address;

(4) the directness of the injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex damage apportionment. *AGC*, 459 U.S. at 537–44, 103 S.Ct. 897.

**Antitrust Injury**

The Second Circuit has applied the AGC factors using a two-pronged analysis. First, a plaintiff must allege that it suffered antitrust injury.[1] To establish antitrust injury, a plaintiff must allege facts showing that it suffered "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Courts in this Circuit employ a three-step analysis to determine whether a plaintiff has plausibly alleged an antitrust injury. *Gatt*, 711 F.3d at 76. First, the plaintiff must identify the practice complained of and the reasons the practice is or might be anticompetitive. *Id*. Second, the court must identify the actual injury alleged by the plaintiff. *Id.* Third, the court must compare the anticompetitive effect of the practice at issue to the actual injury alleged by the plaintiff. *Id.*

**Step 1**

As the first step of our three-part analysis, the Plaintiff must allege that the Defendants have engaged in unlawful anticompetitive conduct. *Port Dock and Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 122 (2d Cir. 2007). "The bar for such a showing is a low one." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F. 3d 57, 62-63 (2d Cir. 2019) (internal quotations and citations omitted).

As in *Casey's* Plaintiff's complaint does not adequately allege that Defendants' business

[1] Since the Court finds that the plaintiff failed to adequately plead antitrust injury, the Court will not address whether the Plaintiff is an efficient enforcer. Moreover, the Court will not address the Defendants' other arguments for dismissal.

practices, which involved choosing who could sell their trademarked goods, were unlawful. Plaintiff claims he was injured by Defendants' refusal to continue to sell trademarked NFL merchandise to distributors like Casey's. But this is not an injury that the antitrust laws were designed to redress. Although the alleged scheme excludes some retailers from purchasing from some licensees, the scheme does not, as alleged, harm competition. Antitrust law protects competition not competitors. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005).

Plaintiff claims the NFL Defendants have a monopoly over deciding who to license for the manufacture of their products. This situation existed before the scheme and still exists--lawfully. A trademark owner has a right to decide who to give licenses to and the law does not prohibit cooperation between NFL teams to form a single entity to handle licenses regarding trademarks for the league and each team. The fact that the NFL Defendants and Fanatics–both upstream from Casey's as trademark owners and manufacturers–are vertically integrated downstream, meaning they also participate as retailers, does not mean that agreements that have some effect on the TPOM are anticompetitive. In fact, Plaintiff's claim that the NFL Defendants' scheme is tethered to their decision making further up the stream of commerce actually concerns a unilateral, vertical, decision to refuse to allow sell manufacturers to sell unauthorized retailers, who wish to sell on TPOMs. [2] Plaintiff fails to sufficiently allege anything anticompetitive about the NFL Defendants' insistence that only authorized retailers sell licensed products on TPOMs, the scheme does not, as alleged, harm competition. Antitrust law protects competition not competitors. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005). Moreover, Plaintiff does not allege anything specific to him as a consumer that differentiates the analysis the Court undertook in *Casey's* on this point.

i. **Step 2**

The second step of our three-part analysis requires that a court "look to the ways in which

the plaintiff claims it is a worse position as a consequence of the defendant's conduct." *Gatt Communs., Inc., v. PMC Assocs., L.L.C.*, 711 F.3d 68, at 76 (2d Cir. 2013). (internal citation and quotations omitted). Here, the Plaintiff alleges that the anticompetitive agreements caused consumers to pay higher prices for NFL Licensed Products and discouraged new entrants into the online retail market for those products. Complaint ¶ 252. Plaintiff alleges "[b]efore 2016, online retail prices for NFL Licensed Products were trending steadily downward. Since 2017, however, prices have reversed course and have increased each year as Defendants' anticompetitive conduct has allowed them to charge consumers ever higher supracompetitive prices." *Id*. ¶ 303. Plaintiff provides the following example, "a Fanatics-branded Super Bowl Champion Locker Room T-Shirt that cost $27.99 in 2017 cost $37.99 (plus shipping) in 2022." *Id*. Plaintiff argues the price increases that Defendants are distorting the market to raise prices. *Id.* ¶ 213. The Court is skeptical of the conclusion Plaintiff draws that higher prices over a five-year period, especially post the COVID-19 pandemic, signifies wrongdoing from Defendants rather than inflation. *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 533 (M.D. Tenn. 2023) (rejecting conclusory "price increase" allegations and Section 1 claim where it was "impossible to disentangle [alleged increases] from regular market forces like inflation."); *Apple*, 586 F. Supp. 2d at 1199 ("mere existence of a price differential … does not necessarily mean that a product is unconstrained by competition"). Additionally, Plaintiff does not allege facts that he even purchased this T-shirt, calling into question whether he suffered a requisite past injury because of higher prices. *Scaturo v. Fanatics, Inc.*, No. 1:25-CV-02202-LTS, 2026 WL 810372 (S.D.N.Y. Mar. 23, 2026), at *7-8. Therefore, it is unclear whether Plaintiff is worse off because of Defendants.

**Step 3**

The third and final step of our three-part analysis requires that the court "compar[e]" the "anticompetitive effect of the specific practice at issue" to "the actual injury the plaintiff alleges." *Port Dock*, 507 F.3d at 122. Here, the antitrust injury is lacking because Plaintiff's purported injury does not match the anticipated anticompetitive effect of the ODP.

Even assuming, Plaintiff is harmed by the actions of the defendants, the law protects competition, not competitors. The anticipated effect of the allegedly anticompetitive scheme would be higher prices for consumers. There is nothing in the complaint adequately alleging that consumers **must** pay higher prices as a result of the alleged scheme. While it appears that consumers who insist on buying from unauthorized retailers, like Casey's, would pay higher prices, there is no adequate allegation that consumers, in general, would be forced to pay higher prices as a result of the scheme.[2]

This Court therefore finds that the Plaintiff's allegations fail to demonstrate antitrust injury "of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' acts unlawful." *Brunswick*, 429 U.S. at 489.[3] Therefore, the Plaintiff does not have antitrust standing to pursue these claims.[4]

## CONCLUSION

[2] Indeed, Casey's "would have suffered the identical loss" whether the ODP is anticompetitive or procompetitive. ECF No. 63 at 13.

[3] In addition, Plaintiff claim that Amazon entered into an agreement with the NFL that prevents unauthorized retailers from selling NFL licensed goods on its website. Plaintiffs do not adequately allege how this is unlawful. Similarly, Plaintiffs fail to adequately allege how

[4] Since the Court has found that Casey's has failed to adequately allege antitrust injury, the Court does not address whether plaintiff and the class are efficient enforcers. Nor does the Court directly address Defendants' other arguments for dismissal.

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED** and the Complaint is **dismissed without prejudice**. The Parties should file a joint status report by October 14, 2026. The Clerk of Court is ORDERED to terminate all pending motions.

**SO ORDERED.**

**Dated: September 29, 2026**
**New York, NY**

**ANDREW L. CARTER, JR.**
**United States District Judge**